Agricultural Ins. Co. *v.* Ark. Power & Light Co.
5-2740                                                361 S. W. 2d 6
Opinion delivered October 1, 1962.
[Rehearing denied November 5, 1962.]

*McMillen, Teague & Coates*; *Thompson, Coe, Cousins & Irons,* Dallas, Texas, for appellant.

*Wright, Lindsey, Jennings, Lester & Shults; House, Holmes, Butler & Jewell,* for appellee.

Paul Ward, Associate Justice. The subject of this litigation is Boiler Unit No. 2 of the Harvey Couch Steam Electric Station, property of the Arkansas Power and Light Company, located near Stamps, Arkansas. On the night of October 11, 1957 an explosion occurred within this Unit. The Arkansas Power and Light Company (hereafter referred to as "Arkansas") carried insurance (including explosion insurance) covering, among other properties, this Unit. This insurance was written by 102 separate companies, 100 of which are the appellants herein and the other two are appellees. The insurance policies are identical in form, including the explosion clauses, and each policy contained a "joint loss" clause. The amount of damages caused by the explosion was stipulated and is not an issue here.

The pertinent clause in each of the policies is set out below.

### " 'INHERENT EXPLOSION CLAUSE:

" '1. In the interest of the Insured, the condition of this policy excluding loss from explosion is hereby modified, and in consideration of the rate at which this policy is written, this Company shall be liable for any direct loss to the property covered hereunder caused by explosion and by any artificial electrical disturbance immediately preceding and causing such explosion occurring in any part of the plant of which the property insured hereunder is a portion, or occurring in any structure containing property insured hereunder; provided such loss exceeds the sum of $200 (inclusive of loss, if any, by ensuing fire) but only for this Company's *pro rata* part of the amount of such excess. Provided, further, that in each and every instance the explosion results from the hazards inherent in the business as conducted therein and not otherwise and except as hereinafter provided.

" '2. Loss by explosion shall include direct loss from explosion originating within unfired pressure vessels and from the explosion of accumulated gases or unconsumed fuel within the firebox (or the combustion chamber) of any fired vessel or within the flues of passages which conduct the gases of combustion therefrom, *but this company shall not be liable for any loss by explosion originating within steam boilers, steam pipes, steam turbines, steam engines,* internal combustion engines, rotating parts of machines or machinery, unless fire ensues and then shall be liable for loss by fire only.

" 'Electrical arcing, water hammer, and the bursting of water pipes are not explosions within the intent or meaning of this Inherent Explosion Clause.' " (Emphasis added.)

The total of appellants' policies on all of Arkansas' properties is $95,990,000, and the total of all the policies is $97,300,000.

As before stated, Arkansas and two of the group of insurance companies are appellees. Another appellee is the American Motorist Insurance Company. Its policy also contains an explosion clause, but it claims that (under the wording of said clause) it is not liable if Arkansas had other explosive coverage. All of the policies included other coverages besides explosions.

On May 19, 1959 appellants filed a complaint in the circuit court against Arkansas and the American Motorist Insurance Company, hereafter called American, (asking to have the other two insurance companies made defendants, as necessary parties) in the nature of a declaratory proceeding, asking the court to make certain declarations of law, and stating that American had denied all liability under the terms of its policy. In the complaint appellants alleged that "the cause of the explosion was not a peril covered by the fire and lightning policies to the appellee utility in any sum or amount". Appellants further alleged that "there is no liability under their policies and that the entire liability for the damage is covered by the policy of the American Motorist Insurance Company." Alternatively it was pleaded that, if they were held liable, American was also liable, and that, under the joint loss clause (in all the policies), the loss should be prorated. In addition it was alleged in effect that the same result should be reached because of certain "Agreement of Guiding Principles" to which all insurance companies adhere. The essence of appellants' prayer was: (1) that the court declare the appellants not liable; (2) that American be declared liable for the entire amount of the loss; (3) that, alternatively, the loss be apportioned among all the insurance companies (including American) pursuant to the "joint loss" clauses and the "Agreement of Guiding Principles". Exhibits were attached to confirm and sustain related allegations in the complaint.

After certain procedural matters were disposed of the two appellee insurance companies filed answers in which they neither admitted nor denied liability to Ar-

kansas, and appellants then filed an amendment to their complaint. Therein appellants alleged that ". . . the explosion and resulting damage originated in a steam pipe in the steam boiler"; that it " . . . accidentally cracked, ruptured, and exploded, setting in motion an uninterrupted, continuous, connected series of events, directly and proximately terminating in an explosion of gas in the boiler", and that they have no liability to Arkansas.

On October 12, 1959, American filed a separate answer in which, after admitting and denying certain allegations contained in the complaint and the amendment thereto, it was alleged its policy did not cover the explosion in question "in the event such an explosion is covered by any other valid and collectible insurance", and that appellants' policies provided such coverage. On October 16, 1959 Arkansas filed its separate answer in which, among other things it was alleged: It had no knowledge of any "Agreement of Guiding Principles" entered into between various insurance companies; it agreed the court should decide whether appellants' policies covered the explosion; and, that a justiciable issue was presented and that the rights, obligations and liabilities of all parties should be determined. In Arkansas' cross-complaint it asked the court to impanel a jury to determine the damages to which it is entitled under the several policies. Later Arkansas filed an answer to the amended complaint denying the allegation that the explosion occurred in a steam pipe as alleged by appellants.

Then on October 23, 1959 appellants filed a reply to Arkansas' pleas above mentioned. Therein appellants set out in full the clause in their policies designated "Inherent Explosion Clause" (copied above); they deny the explosion occurred as stated by Arkansas; they admit a justiciable issue exists; and, they state they are entitled to a "jury trial upon any controverted issue of fact".

There followed a lengthy trial on the above issues wherein voluminous testimony and exhibits were introduced in evidence, and, after numerous instructions by the court, the matter was submitted to the jury along with the following separate forms of verdicts:

(1) "We, the jury find for the Arkansas Power & Light Company against the plaintiff insurance companies.

_____
Foreman

(2) "We, the jury find for the defendant, American Motorists Insurance Company.

_____
Foreman

(3) "We, the jury, find for the Arkansas Power & Light Company against the American Motorist Insurance Company.

_____
Foreman

(4) "We, the jury find for the plaintiff insurance companies.

_____
Foreman

(5) "We, the jury, find that the direct loss from an explosion of accumulated gases or unconsumed fuel within the firebox or combustion chamber of a fired vessel or within the flues of passages which conduct the gases of combustion therefrom was:

$_____

_____
Foreman

"We the jury find that the loss to property of Arkansas Power & Light Company directly damaged by an explosion of a steam pipe was:

$_____

_____
Foreman"

450

At the bottom of the last form of verdicts the following occurs:

NOTE: "This form of verdict will be used by you only if you find that there were two explosions, and the sum of the two amounts should be $1,658,634.89."

After the deliberation the jury returned into open court with the following verdicts:

"We, the jury, find for the Arkansas Power & Light Company against the plaintiff insurance companies.

/s/   Sam Wortman,

Foreman"

"We, the jury, find for the defendant, American Motorists Insurance Company.

/s/   Sam Wortman,

Foreman"

As previously stated, there was a lengthy trial at which a mass of testimony and exhibits were introduced, including voluminous technical testimony relative to the construction and operation of Unit No. 2. However, we feel, in view of the jury verdicts and our disposition of the case hereafter set forth, it would serve no useful purpose to attempt to abstract the record in detail, but that it will suffice to set forth only a summary of the pertinent facts involved.

What is designated as Boiler Unit No. 2 is a square metal structure approximately 130 feet high and 30 feet in width and (apparently) about the same in depth. The Unit is lined inside with steam water pipes which are heated by the combustion of a mixture of air and gas forced or blown into the large combustion chamber through 18 apertures on the east side of the Unit. Also, the Unit on the west side but within the overall structure, is what is called a "bird cage" which is about 11 feet wide and extends from near the top of the structure down about one half the way to the bottom. Inside the bird cage (near the bottom) there is an assembly of water

pipes (known as the ''economizer section'') where the water is preheated, and above them is a similar assembly called the ''superheater section'' where the gases not fully burned in the main fire box (which is 20 feet wide and about 80 feet high) are utilized to super heat the water and steam in the metal pipes. Perpendicular steam pipes line the bird cage and form a ''U'' at the bottom. After the explosion it was found that one of the steam pipes (about 3 inches in diameter, with walls about three eighths inch in thickness) at the bottom of the ''U'' was broken, apparently by some great force. No one questioned the evident fact that there was a terrific explosion in the large fire box or combustion chamber which resulted in more than $1,000,000 damages to the Unit.

Generally speaking, appellants take the position (a) that the steam pipe broke first and the big explosion followed as a result, and (b) that their policies did not cover that situation.

We agree with the trial court that the principal questions to be decided were (a) whether the steam pipe broke first and caused the big explosion in the large combustion chamber or (b) whether the explosion in the combustion chamber caused the steam pipe to explode or rupture.

Much testimony was introduced by appellants to sustain their theory that the steam pipe exploded first. The theory and contention of Arkansas and American was that the explosion in the combustion chamber caused the steam pipe to break or give way, and they introduced much technical testimony to sustain that theory.

Although, as previously stated, this litigation was begun as a declaratory judgment proceeding to determine the respective rights and liabilities of the several parties, both sides agreed that a jury should be impaneled to try disputed questions of fact, and this was the procedure followed without objections. Appellees contend here that their theory was adopted and sustained

by the jury's verdict. Appellants contend, however, that their theory was not properly submitted to the jury. American contends it was not liable for the damage because, under the terms of its policy, it was not to be liable if there was other insurance to take care of the loss. It is conceded that the liability of the two appellee insurance companies is the same as that of appellants. In addition to the principal issue mentioned above, there are other contentions advanced by appellants which will be examined hereafter. Appellants group their contentions for a reversal under 4 separate points which we will now discuss in the order set out by them:

(1) "The Trial Court erred in refusing to submit to the Jury as requested by Appellants the issue of whether the explosion in Unit 2 of the Harvey Couch Steam Electric Station on October 11, 1957 originated within a steam pipe, because this involved a question of fact for the jury."

Our understanding of the factual situation in this connection, after carefully studying the lengthy discussions ably presented by all parties, may be briefly stated as presently set forth. (a) It is beyond doubt that there was a terrific explosion of "accumulated gases or unconsumed fuel within the fire box" of Unit No. 2 which was the immediate cause of the extensive damage; (b) There can be no doubt, if not in fact conceded, that this damage was covered by the "Inherent Explosion Clause" (paragraph 2) contained in appellants' policies (unless excluded by the emphasized portion); (c) Appellants (relying on said exclusion language) offered voluminous testimony to prove the terrific explosion previously mentioned was set off by an explosion or rupture in a steam pipe in the bird cage; (d) This theory of appellants can be maintained only by showing two explosions were involved; and, (e) this situation presented a fact question for the jury's determination. The jury found that there was only one explosion, and this finding must, of course, be sustained if there was substantial evidence to support it.

There is no doubt in our minds that appellees did present such substantial evidence. This fact is so clearly shown by the record that it would be supererogation to attempt to set out the voluminous testimony. In fact, we do not understand that appellants seriously challenge this point. They do, however, ably contend that this fact was not presented (or properly presented) to the jury. Although we do not agree with this contention, we now proceed to discuss it.

The instructions requested by each party and those given by the Court were voluminous and it would be impractical and useless to do more than refer to the pertinent portions. The trial court, after refusing numerous instructions requested by each of the parties, gave instructions to the jury covering ten pages in the record. (It is noted here that appellants challenge no specific instruction in the points set out in their brief.)

A careful study of the trial court's instructions and the several forms of verdicts submitted to the jury convinces us that the issue (mentioned above and insisted on by appellants) was properly presented to the jury. Touching the issue in question the court gave the following instructions:

(a)    (In essence) the court told the jury the burden was on Arkansas to show its loss was covered by the general terms of appellants' policies, and, this having been done, the burden shifted to appellants to prove the loss came within the exception or exclusion clauses, and that the burden was on appellants to prove the steam pipe exploded or ruptured before the explosion in the combustion chamber.

(b)    ". . . the only issue for you to determine is the nature of the explosion or explosions which caused the damages . . ."

(c) (In essence) if the loss suffered "from an explosion of accumulated gas or unconsumed fuel within the fire box . . ." you find for Arkansas. If, on the other hand you find the loss resulted from an explosion

or rupture in a steam pipe your verdict will be against American.

(d) (In essence) if you find there were two explosions and one of them occurred in a steam pipe, then American would be liable.

(e) "The word Explosion as used in connection with the tube also means ruptured."

Based on the above instructions, the jury was handed five forms of verdict which have been previously set out in full. Reference to form 5 (with the court's explanatory note attached at the bottom) leads us to only one conclusion, i.e., the jury found there were not two explosions. As pointed out before, appellants admit there was an explosion in the fire box, so the jury must have found there was no explosion (or eruption) in the steam pipe.

(2) Appellants' next point is phrased as follows:

"The Trial Court erred in refusing to submit to the Jury issues raised by the pleading and evidence as to ambiguities in the insurance policy of Appellee American Motorists Insurance Company which if found by the Jury in Appellants' favor would have resulted in a lesser judgment against Appellants under the joint loss clause in their policies."

We see no merit to appellants' contentions under this point, and we believe they can be adequately disposed of in the following summary manner.

Arkansas had a policy written by American which also covered (in a limited way) damage by explosion such as the one in this case. An endorsement on the policy reads as follows:

"It is agreed that coverage is provided hereunder as respects an explosion of gas within the furnace of a boiler or gas passages therefrom to the atmosphere, *except that this policy does not provide this coverage in the event such an explosion is covered by any other valid and collectible insurance."* (Emphasis added.)

Without going into the merits of appellees' contention that appellants, not being a party to the contract of insurance between American and Arkansas, have no right to challenge the meaning of the policy placed on it by the two participating parties, we think the meaning of the emphasized words in the above clause is clear and unambiguous. In plain language it says American was not to be liable if there was other coverage. In view of the conclusion we have reached under point (1) above, it is now established that the explosion was covered by other insurance, i.e. by appellants' policies. This interpretation is sustained by the record which discloses that Arkansas paid American only $11.71 for this limited coverage when they would have had to pay $1,241.24 for unlimited coverage.

Much the same reasoning disposes of appellants' contention that American should have to pay its proportional part of the damages because American's policy contained a "joint loss" clause just like all of appellants' policies. It seems to us that appellants' contention loses all its force since we have already concluded (as did the jury) that American is not liable for any of the damages caused by the explosion—hence there could be no "joint loss" as to American.

(3) Appellants here contend that "it was a question of fact for the jury that furnace explosion coverage was specified in the insurance policy" of American. We feel that what we have previously said refutes and disposes of this contention. The trial court took the position, and we agree, that there was no ambiguity in the language contained in American's policy. It was the province of the court and not the jury to determine this fact. See: *Steele* v. *McCargo*, 260 F. 2d 753 (8 Cir. 1958). Insurance policies are to be interpreted like other contracts. See: *The National Life and Accident Insurance Company* v. *Baker*, 234 Ark. 670, 354 S. W. 2d 1. Also, if the contract is not ambiguous, it is the province of the court and not the jury to interpret it, as held in *Lindner* v. *Mid-Continent Petroleum Corporation*, 221 Ark. 241, 252 S. W. 2d 631.

(4) Appellants' final contention for a reversal is couched in this language:

"The Trial Court erred in ruling as a matter of the law that the Agreement of Guiding Principles of May 1, 1950, has no application to the liability of the Appellee American Motorists, because this involved a question of fact for the Jury."

Appellants, in this connection, preface their argument with this statement:

"The Agreement of Guiding Principles is a written guide designed to prevent disputes in the apportionment of losses involving overlapping coverage between boiler and machinery policies and fire, extended coverage and explosion policies, which disputes are declared to be against the interest of the insuring companies and the general public."

The instrument referred to above, consisting of 7 pages, contains this clause:

"Therefore Be It Resolved, that the National Bureau of Casualty Underwriters and the National Board of Fire Underwriters recommend to their respective members and subscribers their concurrence in adopting the following Agreement of Guiding Principles, effective on and after May 1, 1950, at Noon Standard Time, at location of property involved."

Near the middle of the instrument appears the following in bold capital letters:

"The guiding principles apply only when overlapping coverage exists."

Speaking of this instrument the trial court, in its judgment stated:

"The Court finds that the policies of insurance involved here and the Agreement of Guiding Principles are unambiguous, that there is no overlapping coverage, and the Court finds as a matter of law that the Agreement of Guiding Principles has no application under the

facts and circumstances of the case and creates no liability on the part of American Motorists Insurance Company, nor any defense as to the claim of Arkansas Power & Light Company; the Court further finds, as a matter of law, that the joint loss clauses of the policies of insurance have no application under the facts and circumstances in this case.''

In our judgment the court's statement was correct, and we would not presume to rephrase it. It is also our own opinion that the language in the ''Agreement of Guiding Principles'' document is clear and unambiguous, and, as we have already pointed out, the trial court had the right to construe it. The interpretation of the trial court becomes even more conclusive since we have already decided American is not liable for the loss but that appellants are, so there could not possibly be any ''overlapping coverage'' as between American's policy and the policies of appellants.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.