BARNETTE, Judge.
This is a suit for damages for personal injuries sustained by the plaintiff, Reverend James St. Ann, in an automobile accident on January 17, 1964. A judgment was rendered in his favor against Joseph W. Bennett and his liability insurer, Associated Indemnity Company of Newark, New Jersey,[1] in the sum of $5,500. Demands against all other parties were dismissed. The plaintiff has appealed seeking an increase' in quantum. He also seeks a reversal of the judgment rejecting his demands against Bennett’s employer, Keller Construction Corporation, and its general automobile liability insurer, The Employers’ Liability Assurance Corporation, Limited.
The plaintiff was a guest passenger in an automobile owned and driven by Edward Parker. Parker was made a defendant herein and Delta Paving Company was made a third party defendant by Bennett and his insurer. By supplemental petition Delta was made defendant by the plaintiff. The demands against Parker and Delta and their respective insurers were dismissed and no appeal was taken. The demands against Liberty Mutual Insurance Company, comprehensive general liability insurer of Keller, made defendant in plaintiff’s original petition, were dismissed by summary judgment affirmed on appeal by this court. St. Ann v. The American Insurance Companies, La.App., 182 So.2d 710 (1966). Keller and Employers’ made third party demands against Parker, Delta Paving Company, Associated Indemnity and Bennett seeking indemnity, or alternatively, contribution for such loss as they may sustain by reason of plaintiff’s demands. Their third party demand was dismissed and no appeal was taken.
The only questions presented by this appeal for our decision are: the liability of Keller Construction Corporation and, if that is established, whether its insurer, The Employers’ Liability Assurance Corporation, Limited, is liable as a primary or excess insurer; and quantum. We will address ourselves first to the question of Keller’s liability.
Bennett was an employee of Keller engaged in a building construction project at Village de L’est on Michoud Boulevard at *819 or near Chef Menteur Highway in Orleans Parish. On the morning in question, January 17, 1964, because of rain it was decided to shut down the construction work in the subdivision.
Bennett testified that arrangements had been previously made to meet a representative of the Sewerage and Water Board about nine o’clock in the morning at a point near the intersection of Michoud Boulevard and Chef Menteur Highway to make a tie-in to the water main. When it was decided on account of the weather not to proceed with the work, Bennett went a distance of four or five blocks in his own automobile to meet an employee of the Sewerage and Water Board to cancel arrangements for the tie-in. About 8:45 a. m., when he arrived at the point where Michoud Boulevard intersects Chef Menteur Highway, he became involved in a collision with the automobile driven by Parker in which St. Ann, a passenger, was injured. Bennett said the representative of the Sewerage and Water Board was waiting for him across Chef Menteur Highway, but he did not say if the tie-in cancellation order was delivered. He did testify that he reported for work that morning at eight o’clock and worked until “probably four-thirty.”
This is the only indication in the record that Bennett was acting in the scope of his employment other than certain statements found in the testimony of Robert Carter, Jr., Carter, an employee of Keller, who, when testifying about the accident, said:
“ * * * The other boy was working with me, I and him was making a tie-in across the road. We were standing there waiting for Mr. Bennett to come and give us orders to work on or knock off. íjí í{í »
Keller in its answer admitted Bennett’s employment but denied that he was acting in the scope of his employment at the time of the accident. Keller, however, offered no evidence which contradicts Bennett’s testimony. Plaintiff may have been able to corroborate Bennett’s testimony through the employee of the Sewerage and Water Board, but he made no attempt to do so. However, even without this corroboration, in the absence of contradiction by Keller we accept Bennett’s statements as true. In his reasons for judgment, the trial judge gave no reason for dismissing the suit against Keller, and we know of no reason why the uncontradicted testimony of Bennett, an admitted employee, should not be accepted as conclusive. The necessity for the water main tie-in; the cancellation of the order because work was being shut down; the fact that Bennett was en route to deliver the cancellation order — all are highly probable, and there is no reason to assume otherwise in the absence of contradiction. Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587 (1960). We therefore hold that under the facts as we have found here Bennett was acting in the scope of his employment, and Keller Construction Corporation is liable under the doctrine of respondeat superior for his negligent operation of the automobile being used by him in the service of his employer. LSA-C.C. art. 2320.
Keller was insured by The Employers’ Liability Assurance Corporation, Limited, under a policy of insurance filed in evidence. Under the policy provisions, the automobile owned by Bennett and used by him in the business of the named insured was embraced within the coverage clause of the insuring agreement, subject however to the “excess insurance” condition, which is as follows:
“14. Other Insurance. * * * the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.”
*820 Under the express terms of the contract of insurance then, Employers’ liability is limited to any amount exceeding the coverage limits or which is not collectible from the primary insurer, Associated Indemnity Company. O’Brien v. Traders and General Insurance Company, 136 So.2d 852 (La.App. 1st Cir. 1961); Vallaire v. Employers Liability Assurance Corp., 177 So.2d 391 (La.App. 4th Cir. 1965).
This brings us to the issue of quantum. The plaintiff by this appeal seeks an increase in the award from $5,500 to something in excess of $100,000 for loss of earnings, pain and suffering, medical expense (past and future), and incidentals. He was primarily a carpenter and sometimes worked in a foreman’s capacity on construction projects. He was also a part-time minister for which services he received voluntary contributions from his church members. His principal source of income was his labor. He claims permanent disability to do any kind of work requiring physical exertion, as a consequence of the injuries sustained in the accident. His alleged injuries are:
(a) Severe contusion, injuries and damage to the chest and particularly the right anterior thorax, and the development of traumatic tumors requiring surgical removal;
(b) Whiplash injury to the neck;
(c) Cerebral concussion; and
(d) Injuries to the lumbar spine aggravating arthritis.
The trial judge in his reasons for judgment accurately summarized the medical testimony as follows :
“Three doctors testified in the case. On behalf of the plaintiff, Dr. Louis A. Ensenat, who was the successor to the practice of Dr. John Andrews who treated the plaintiff immediately after the accident, found that the plaintiff had an injury to his left chest and breast; injuries to his head, that is a cerebral concussion; a bruised heart and an aggravation of a condition of his lumbar spine. The other two doctors who testified in the case are Dr. Irving Redler, an orthopedist, and Dr. Sam Nadler, an internist.
“Dr. Redler, who had examined the plaintiff on September 8, 1964 and October 29, 1964 [sic], was of the opinion that the Reverend James St. Ann did not reveal any evidence of residual disability affecting the neck or anterior chest wall or low back and on October 29, 1965, the last day he saw him, he could find no evidence as to the disability from the neck or back and from an orthopedic viewpoint the man was entirely well.
“Dr. Nadler saw the plaintiff on October 29, 1965, and the plaintiff’s complaints were that he had hit his head against the windshield and his chest against the dashboard and that he had difficulty in breathing. Plaintiff complained that he had discomfort in his head, chest, back and neck and in addition to a cervical sprain he had a low back sprain. He further complained that his heart pounded and that he had shortness of breath. Putting the plaintiff through a series of tests, including exercise, the doctor saw he had no objective evidence whatsoever of heart disease, and that he has nothing wrong with his heart. The doctor further testified with reference to a fibroma, which the plaintiff attributes to trauma; however, in the doctor’s opinion the fibroma was caused by overgrowth of the ducts in the breast.
“The record shows that Dr. Andrews, who is now deceased, treated the plaintiff for two months for severe contusion, injuries and damage to the chest and to the right anterior thorax, whiplash injury to the neck, cerebral concussions, in addition to a lumbosacral sprain and that he administered peritrate, a vasodilator.
*821 “It is significant to note that Dr. Andrews’ record shows that he discharged the plaintiff on June 12, 1964, although Dr. Ensenat continued to see this plaintiff until May 25, 1966.
“It is the opinion of the Court that the Reverend James St. Ann suffered a bruise of the right chest and to the right anterior thorax, a cervical sprain, cerebral concussions, and a lumbosacral sprain. It is also significant to note that he was out of work from September 8 to December 21, 1964.
“The Reverend James St. Ann contends that he was working as a foreman and that when this job played out he was unable to hold any other job because of his physical disabilty to follow his trade as a carpenter because of his heart condition.
“The Court, from the medical testimony adduced, is not of the opinion that this man suffers with a heart condition.”
Counsel for plaintiff vigorously contends that plaintiff suffers from a totally disabling heart condition as a direct result of the trauma sustained in the accident. He points to the trial judge’s finding of fact that plaintiff “suffered a bruise on the right chest and to the right anterior thorax,” and argues that in view of that finding, he gave too much weight to the testimony of Dr. Nadler. Dr. Nadler testified that all his findings were negative. He found nothing in the heart or lungs to which he could attribute the shortness of breath, pounding and racing heart, dizziness, and other complaints.
Plaintiff relies upon the medical testimony of Dr. Ensenat, a general surgeon, who saw him the first time in March, 1965, fourteen months after the accident. In the meantime he had been treated by Dr. Andrews who died in the early part of 1965. Dr. Andrews had discharged plaintiff on June 12, 1964, but saw him occasionally afterward. Dr. Ensenat testified at length from the entries in Dr. Andrews’ notes and gave his interpretation of their meaning in certain respects. There was nothing in Dr. Andrews’ notes specifically indicating a heart involvement; on the contrary electrocardiogram was within normal limits. Dr. Ensen-at deduced from the fact that peritrate and nitroglycerin tablets were prescribed that Dr. Andrews must have found heart trouble which he attributed to contusion. He found no lung trouble to indicate a cause of plaintiff’s dyspnea. He also found a subsequent electrocardiogram to be within normal limits. He attributed the fibroma which he removed by surgery to the traumatic blow to his breast. The blow in his opinion was severe enough to bruise the heart, to which he attributed the cause of plaintiff’s complaints. He testified the plaintiff had ischemia, described by him as a reduced blood supply to the heart proper. He conceded that arteriosclerosis could also be a cause of ischemia, but that since plaintiff had no symptoms before the accident, and there was a severe blow to the chest wall, his opinion was that this was the cause.
Plaintiff cites Zito v. Schneller, La.App., 133 So.2d 169 (1961), in which case this court found a heart attack which occurred 20 days after the accident was causally connected, in spite of the disagreement among the medical experts. There we did consider factors brought out by lay witnesses, but we do not find that decision apposite to the factual situation and medical testimony here.
Dr. Nadler examined plaintiff on October 29, 1965. He testified at some length on the history given to him by plaintiff and which he obtained from other sources. He found a normal blood pressure; heart normal in size from physical and X-ray examination; no murmurs or irregularities; lungs normal from physical and X-ray examination; abdomen negative; and reflexes normal. An electrocardiogram was done and found normal. This was followed with a period of exercises known as an exercise tolerance electrocardiogram designed to put a load on *822 the heart to show up limitation of circulation in the coronary arteries. An electrocardiogram taken immediately following the exercise was normal. Another one taken 10 minutes later was also normal. He found no objective evidence of heart disease. Blood tests and urinalysis were normal and Wasserman negative.
He said the shortness of breath was a “complete mystery” to him. He could find no evidence of any condition which could, in his opinion, cause it. He was specific that there was no evidence of cardiac or lung disease or other organic disease upon which he could base this condition. He said trauma could cause this condition if the blow was severe enough, but he found no evidence of deformity of chest, lung tissue destruction, or severe cardiac damage to indicate that such a severe trauma had been sustained. He also said that the irregularity and infrequency of the episodes of shortness of breath was not consistent with shortness of breath from an organic cause.
The fibroma, which he called a fibro-adenoma, was caused he said, by a condition known as gynecomastia, which is not too uncommon. It was significant he thought that both breasts were enlarged. He was of the opinion that it definitely did not result from a trauma received in the accident.
Dr. Redler had examined plaintiff in connection with a previous back injury about a year prior to the accident in question, and saw him following his accident of January 17, 1964, on September 8, 1964, and again on October 29, 1965. His examination was chiefly in the field of orthopedics and was essentially negative.
There can be no doubt that the plaintiff did sustain the injuries as found by the trial judge which caused some temporary disability and discomfort when he did return to his carpentry. However, we can find no manifest error in his opinion that there is no proof of heart injury, therefore we will not disturb his factual findings in this regard. This principle of appellate review is too well-settled in our law to necessitate specific citations here. The medical testimony in our opinion supports the conclusion that if plaintiff does have the symptoms of ischemia complained of, they are not related to any organic cause attributable to the accident of January 17, 1964.
Plaintiff has cited Primm v. Continental Casualty Company, 143 F.Supp. 123 (W.D.La.1956), on the issue of quantum. That case involved a heart injury which resulted from a crushing chest blow in a log truck accident. The causal connection was clearly proven and an award of $72,500 was given.
We do not find that case nor Crowther v. Fenstermaker, 96 So.2d 91 (La.App.1st Cir.1957), also cited by plaintiff, to be relevant to the issue of quantum here, since here there is no proof of heart injury. Furthermore, in the Crowther case there were serious multiple fractures and other injuries, treatment for which was complicated by a heart condition attributable to rheumatic fever.
The judgment of $5,500 granted by the trial judge is not itemized, and we have no way of knowing how much thereof was allowed for loss of wages, medical expenses, and other special damages.
The plaintiff failed to prove with any certainty the extent of wages lost which might be attributed directly to his temporary disability. It is significant that his income tax returns show that his income in 1964, the year of his accident, was significantly higher than in the previous year. We must hold that this special item of damage has not been proven by a reasonable preponderance of the evidence.
The item of medical expenses was the subject of some dispute on trial below. Defendants contend that a substantial amount of the $694 claimed was related to treatment for plaintiff’s complaints having no relationship to the accident. We assume the trial judge took this into account and that he intended the $5,500 to cover all items of damage, general and special. We find no *823 manifest error in his judgment in this respect, and plaintiff’s prayer for an increase will be rejected.
Having held Keller Construction Corporation liable under the doctrine of re-spondeat superior, the judgment will be amended to cast it in solido with defendants Bennett and Associated Indemnity Company.
Since the judgment is within the policy limits of the primary insurance coverage of Associated Indemnity Company, Employers’ liability under its excess insurance coverage is contingent on the uncol-lectibility of the judgment from the primary insurer. O’Brien v. Traders and General Insurance Company, supra.
For these reasons, the judgment appealed from is reversed insofar as it dismisses plaintiff’s demands against Keller Construction Corporation and The Employers’ Liability Assurance Corporation, Limited, and judgment is now rendered in favor of plaintiff, Reverend James St. Ann, against Joseph W. Bennett, Associated Indemnity Company of Newark, New Jersey, and Keller Construction Corporation, in solido, in the full sum of $5,500, and in plaintiff’s favor against The Employers’ Liability Assurance Corporation, Limited, only for such amount as may be uncollectible from the primary insurer, Associated Indemnity Company of Newark, New Jersey. In all other respects the judgment appealed from is affirmed.
Costs of this appeal shall be paid by defendant-appellee Keller Construction Corporation.
Reversed in part; amended and affirmed.

. Associated Indemnity Company of Newark, New Jersey, was substituted as party defendant (insurer of Bennett) in place of The American Insurance Companies, named as defendant in the original petition and named in the caption of this case.