STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,

v.

John Matthew BURGIN, et al., Defendants.

Civ. No. 90–5004.

United States District Court, W.D. Arkansas, Fayetteville Division.

Nov. 19, 1990.

Thomas B. Pryor, Pryor, Barry, Smith & Karber, Fort Smith, Ark., for plaintiff.

James A. Penix, Jr., Penix & Taylor, Springdale, Ark., John C. Everett, Everett & Gladwin, Prairie Grove, Ark., Bobby Lee Odom, Odom & Elliott, Fayetteville, Ark., Robert L. Jones, Jr., Jones, Gilbreath, Jackson & Moll, Fort Smith, Ark., Walter B. Cox, Davis, Cox & Wright, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a declaratory judgment action initiated by the plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), to determine which, if any, of three insurance policies issued by State Farm, Shelter Mutual Insurance Company (Shelter), and American General Fire and Casualty Company (American General), provide coverage for injuries received by defendant, John Burgin, in an automobile accident. This matter was submitted to the court on a partially stipulated record and by the presentation of other testimonial and documentary evidence on October 22, 1990. The following shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

*The Facts and Principal Players*

State Farm issued an automobile liability policy to Ron and Sheila Casteel expressly insuring a 1988 Ford Escort. It is not disputed that this policy was in full force and effect on the date of the accident.

American General issued a garage liability insurance policy to B & K Enterprises, Inc., (B & K), also known as Mazda of Springdale. B & K is the owner of the 1987 Chevrolet van which was being driven by Ron Casteel at the time of the occurrence.

Shelter issued an automobile insurance policy to Phillip and Charlotte Steele, insuring their 1984 Ford Bronco.

John Burgin was injured in an automobile accident in Iowa when the Chevrolet van driven by Ron Casteel, in which Burgin was a passenger, collided with another vehicle.

The evidence presented to the court indicates that Phillip Steele and Ron Casteel are stockholders in American Heritage Productions, Inc. (American Heritage) which produces and markets documentary films about the "Old West". For reasons of obscure historical importance, Steele and Casteel planned a trip to Minnesota, Kansas and Missouri to shoot documentary footage. The trip required at least four people: Ron and Sheila Casteel, Steele, and a photographer.

From experience these people knew that the Steele's 1984 Bronco would not accommodate four people and their equipment for such a trip. Steele went to Mazda of Springdale to request that James Baker (the owner-manager of B & K Enterprises) rent them a suitable vehicle. Baker informed Steele that B & K no longer rented vehicles but that he would loan them a suitable automobile. It is clear from the record that the Chevrolet van was loaned and not rented to the group. Further, Baker placed no restrictions upon who could operate the van or the purpose for which it could be used. As Steele and Casteel drove away from Mazda of Springdale, Casteel drove the Chevrolet van and Steele drove the Bronco to Steele's office and left it there during the trip. As noted, Casteel

was operating the van at the time of the accident which injured Burgin, a passenger in the van.

*The Policies:*

*The Shelter Policy Issued to the Steeles*

■ As indicated above, Shelter issued a policy to the Steeles, expressly covering the 1984 Bronco. That policy also insures "temporary substitute autos" and "non-owned autos":

(4) *Described auto* means the vehicle described in the Declarations and includes a *temporary substitute auto*....

\* \* \* \* \* \*

(6) *Non-owned auto* means any *auto* other than:

(a) the *described auto,* or

(b) an *auto owned* in whole or in part by, or furnished or available for regular use of, either *you* or any resident of *your* household.

\* \* \* \* \* \*

(14) *Temporary substitute auto* means an *auto* not owned in whole or in part by *you* or any resident of *your* household, while temporarily used with the permission of the owner as a temporary substitute for the *described auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

It is at once apparent that, as to the Steeles, the Chevrolet van could, depending on the circumstances, be either a temporary substitute auto or a non-owned auto. In the case at bar there is no contention that the Steeles' 1984 Bronco was "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Therefore, the Chevrolet van can, under the circumstances, be classified under the policy, only as a "non-owned auto".

What persons are insured under the Shelter policy issued to the Steeles as to a non-owned auto? The policy states:

(20) *Insured* means the person, persons, or organization defined as *insureds* in

or with reference to the specific coverage or endorsement.

PERSONS INSURED

As used in this Part, *Insured* means:

(1) with respect to the *described auto*,

(a) *you,*

(b) *your relatives,*

(c) any other person using the auto if its *use* is within the scope of *your* permission, and

(d) any other person or organization liable for the *use* of the *auto* by one of the above persons.

(2) With respect to a *non-owned auto,*

(a) *you*

(b) *your relatives,* provided the actual *use* or operation is with the permission, or reasonably believed to be with the permission of the owner or person in lawful possession, and within the scope of such permission, and

(c) any other person or organization which does not own or hire the *auto* but is liable for its *use* by one of the above persons.

Thus, as to a non-owned auto, the persons insured are the Steeles, relatives of the Steeles acting in accordance with permission given by the Steeles or the owner, and "any other person ... which does not own or hire the (van) but is liable for its use by one of the above persons." It is immediately obvious that Ron Casteel, as the driver of the van at the time of the accident, may be liable for *his own* use of the van, but cannot be "liable for its use by (the Steeles or their relatives)", under the factual allegations presented. It follows that Casteel, as an individual, is not an "insured" under the Shelter policy. Although the *Steeles* are insureds under the policy, according to the parties Burgin does not present a theory of liability encompassing them. Therefore, the Shelter policy provides no coverage as to any of Burgin's claims against Ron Casteel.

### The American General Policy Issued to B & K Enterprises, Inc.

■ As indicated, American General issued a garage liability policy to B & K Enterprises, Inc. This policy obligates American General to:

[P]ay all sums the insured legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies caused by an *accident* and resulting from *garage operations,* (page 1 of 6)

"Garage operations" is defined as:

... the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the *autos* indicated in Part II as covered *autos.* Garage operations also includes all operations necessary or incidental to a garage business. (definition "F", page 1 of 6)

Because "garage operations" is defined in the policy as including the "ownership ... or use of (the Chevrolet van)", the policy provides coverage for the type of occurrence at issue here. As to who is insured under the American General policy, the policy states:

D. WHO IS AN INSURED.

1. For Covered Autos.

a. *You* are an *insured* for any covered *auto.*

b. Anyone else is an *insured* while using with *your* permission a covered *auto* except:

(1) The owner of a covered *auto you* hire or borrow from one of your employees ...

(2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking or storing autos unless the business is *your garage operations.*

(3) Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of *yours:*

(a) Has no other available insurance (whether primary, excess, or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits....

(b) Has other available insurance (whether primary, excess, or contin-

gent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the ... law limits exceed the limits of his or her other insurance.

■ Because it is not alleged that Casteel was the owner of a covered auto borrowed from an employee of B & K, nor that he was using the van while working in the business of selling, servicing, repairing, parking or storing autos, Casteel can be an insured only under D.1.b. Under that section, Casteel is an insured unless he is a customer (and is an insured if he is a customer subject to certain limitations). At this point, the question is whether Casteel qualifies as a "customer".

As to this, the only evidence before the court suggests that neither Steele nor Casteel were "customers" of B & K Enterprises on the day of the accident. The records reflect that Steele bought the 1984 Bronco from B & K several years ago. Additionally, sometime between six and twelve months prior to the accident, Steele told Baker and another employe, Cole, of B & K that he was "looking for" a vehicle similar to the Bronco to serve as a replacement vehicle and informally told them three or four times during this period to contact him if they located such a vehicle. No definite "order" for a particular vehicle had been placed, nor had any contract been entered. This is not sufficient to render Steele a customer on the day of the accident. The most that could be said is that Steele had been and probably will be again, a customer of B & K. Accordingly Casteel is insured under the American General policy for injuries to Burgin arising from Casteel's use of the van.

### The State Farm Policy Issued to the Casteels

■ State Farm issued a policy to Ron and Sheila Casteel covering a 1988 Ford Escort. That policy also, under certain circumstances, insures Casteel while operating a "non-owned car". "Non-owned car" is defined as:

Non-owned car—means a car not:

1. owned by,

2. registered in the name of, or

3. furnished or available for the regular or frequent use of:

you, your spouse, or any relative.

Again, the question is who is insured as to a non-owned car. The policy states:

When we refer to a non-owned car, insured means:

1. The first person named in the declarations;

2. his or her spouse;

3. their relatives;

4. any person or organization which does not own or hire the car but is liable for its use by one of the above persons.

Under the provisions set forth above, State Farm's policy provides coverage for the liability of Casteel while operating the van, unless other provisions of the policy exclude, modify, or limit such coverage. In this regard the policy states that there is no coverage:

2. For any Bodily Injury to:

a. A fellow employee while on the job and arising from the ... use of a vehicle by another employee in the employer's business. You and your spouse are covered for such injury to a fellow employee.

The first sentence quoted immediately above may be construed as excluding coverage for Burgin's bodily injuries under the theory that Burgin was a "fellow employee" of American Heritage whose injuries arose from the use of the van by Casteel ("another employee" of American Heritage) "in (American Heritage's) business." However, the last sentence expressly states that Casteel and his wife *are* covered for such injury to a fellow employee (Burgin). No other exclusion appears to be remotely applicable. As the last sentence can reasonably be construed as including (or not excluding) liability coverage for the Casteels for injuries to Burgin, he is also an "insured" under the State Farm policy.

### Construction of Other Insurance Clauses

■ However, there is more. The State Farm policy contains another insurance clause:

IF THERE IS OTHER LIABILITY COVERAGE

2. Other Liability Coverage Available From other Sources.

Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability of this policy bears to the total....

3. ... Non–Owned Car....

If a ... non-owned car ... has other vehicle liability coverage on it, then this coverage is excess. THIS COVERAGE SHALL NOT APPLY:

a. If the vehicle is owned by any person or organization in a car business; and

b. If the insured or the owner has other liability coverage which applies in whole or in part as primary, excess or contingent coverage.

The general language of Item 3 plainly attempts to modify the coverage provided so as to render any State Farm coverage "excess" coverage only, because the "non-owned" car has (or appears to have) "other vehicle liability coverage" on it (provided by American General). However, by its terms, even the "excess" State Farm coverage does not apply if the van is owned by an organization in a car business and the owner has other liability coverage which applies in whole or in part as primary, excess or contingent coverage.

In other words, if the Chevrolet van is covered by "other liability coverage" of any nature (provided in this case by Ameri-

can General), then there is no coverage at all under the State Farm policy if the vehicle is owned by an organization in the "car business". This is an "escape" clause.[1] The van is owned by B & K which is an organization engaged in a car business. Therefore, if B & K has other liability coverage for the occurrence, primary, excess, or contingent, then State Farm has no exposure under the policy provisions.

The next step is to ascertain whether American General's policy contains similar "excess", "escape", or "other insurance" provisions which arguably are mutually inconsistent with the clauses contained in the State Farm policy. One such clause found in the American General policy is as follows:

I. Other Insurance—Sections II and III. With respect to bodily injury sustained by any person other than the named insured or a relative, the coverage ... shall apply only as excess insurance over any other similar insurance available to such person under the terms of any other motor vehicle insurance policy, and this coverage shall then apply only in the amount of which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

The American General policy's clause is clearly an "excess" clause, providing that coverage is "excess" over "any other similar insurance available" to an injured person, and then only for the amount by which the policy amount exceeds the limit of primary insurance. Thus, we are confronted with a possible conflict between an "escape" clause and an "excess" clause.[2]

The difficult interpretative process of deciphering the effects of "other insurance"

1. An "escape clause" typically provides that the insurer shall have no liability if there is other insurance. See, e.g., clauses at issue in Insurance Co. of N. Am. v. Continental Casualty Co., 575 F.2d 1070 (3rd Cir.1978); Graves v. Traders & Gen. Ins. Co., 252 La. 709, 214 So.2d 116 (1968). An "excess clause" is similar to an "escape clause" but provides that the policy or coverage shall apply only as excess insurance over any other insurance. See e.g., clauses un-

der discussion in Saint Ann v. American Ins. Co., 206 So.2d 817 (La.App.1968); Continental Cas. Co. v. Weekes, 74 So.2d 367 (Fla.1954).

2. Such conflicting clauses are discussed in Annotation: Apportionment of Liability Between Automobile Liability Insurers One or More of Whose Policies Provide Against Any Liability if There is Other Insurance, 46 A.L.R.2d 1163.

clauses has prompted Chief Judge Lay of the Eighth Circuit Court of Appeals to comment that such cases present "the repetitive task of untangling another web of confusion created by the inarticulate language of two automobile liability policies." *Miller v. National Farmers Union Property & Casualty Co.*, 470 F.2d 700, 701 (8th Cir.1972). In that same vein, Justice Tobriner has said, "In entering this legalistic labyrinth of the provisions of these policies, we are not favored, like Theseus, with any thread of principle." *American Auto. Ins. Co. v. Transport Indem. Co.*, 200 Cal. App.2d 543, 544, 19 Cal.Rptr. 558, 559 (1962).

It appears that a reasonably diligent legal researcher can find a line of cases that support about any proposition that the most fertile mind might care to advance. Numerous cases decided by probably a majority of the courts facing that issue have held that, where the policy of one of the insurers contains a provision attempting to preclude any coverage, and the other provides that its coverage should constitute "excess insurance" only in the event other insurance covered the risk, the "excess" insurance did not provide "other insurance" and therefore the "escape" insurer was liable for the loss.[3] It appears that many courts have shown a preference for excess clauses and a disfavor of escape clauses, with the result that escape insurers are often held to be primarily liable.[4]

On the other hand, there are other cases in which several courts favored, for one reason or another, the "escape insurer" over the "excess insurer".[5] Some of those cases involved policies of insurance which express a designated types of policies with which the provision in question might conflict.[6]

There are other views that have been followed by some courts. One is that the insurer of the policy first in effect is liable.[7] Another is that the insurer of the principal tortfeasor, under liability policies, is primarily liable.[8] Some courts have

---

**3.** *Citizens Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.*, 273 F.2d 189 (8th Cir.1959), and cases cited therein. *See also Continental Cas Co. v. Curtis Pub. Co.*, 94 F.2d 710 (3d Cir.1938); *Michigan Alkali Co. v. Bankers Indem. Ins. Co.*, 103 F.2d 345 (2d Cir.1939); *Zurich Gen. Accid. & Liability Ins. Co. v. Clamor*, 124 F.2d 717 (7th Cir.1941); *Travelers Indem. Co. v. State Auto. Ins. Co.*, 67 Ohio App. 457, 37 N.E.2d 198 (1941) (auto operator's "excess" policy is not "other valid insurance" within the meaning of the auto owner's "escape" policy-owner's insurer liable); *Grasberger v. Liebert & Obert, Inc.*, 335 Pa. 491, 6 A.2d 925 (1939); *Jamestown Mut. Ins. Co. v. Erie Ins. Exch.*, 357 F.Supp. 933 (W.D.Pa.1972); *Protective Nat. Ins. Co. v. Bell*, 361 So.2d 1058 (Ala. 1978); *Rocky Mountain Fire & Cas. Co. v. Allstate Ins. Co.*, 107 Ariz. 227, 485 P.2d 552 (1971) (garage "escape" insurer primarily liable as to driver's "excess" insurer because "escape" clause void. However, the liability limitation provision of the "escape" clause is valid).

**4.** *See Fireman's Fund Indem. Co. v. Prudential Assur. Co.*, 192 Cal.App.2d 492, 13 Cal.Rptr. 629 (1961); *Peerless Cas. Co. v. Continental Cas. Co.*, 144 Cal.App.2d 617, 301 P.2d 602 (1956); *New Amsterdam Cas. Co. v. Certain Underwriters at Lloyd's, London*, 34 Ill.2d 424, 216 N.E.2d 665 (1966); *Vandermoere v. Michigan Millers Mut. Ins. Co.*, 34 Mich.App. 429, 191 N.W.2d 501 (1971); *Federal Ins. Co. v. Prestemon*, 278 Minn. 218, 153 N.W.2d 429 (1967); *Western Nat. Mut. Ins. Co. v. United States Fire Ins. Co.*, 269 N.W.2d 34 (Minn.1978); *Insurance Co. of N. America v.*

*Continental Cas. Co., supra; Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 437 S.W.2d 390 (Tex.Civ.App.1969); *Jensen v. Universal Underwriters Ins. Co.*, 208 Neb. 487, 304 N.W.2d 51 (1981).

**5.** *See Indiana Lumbermens Mut. Ins. Co. v. Mitchell*, 409 F.2d 392 (7th Cir.1969); *American Bankers Ins. Co. v. Leatherby Ins. Co.*, 350 So.2d 353 (Fla.App.1977); *Indiana Lumbermens Mut. Ins. Co. v. Mitchell*, 285 F.Supp. 969 (E.D.Ill. 1968); *Zurich Ins. Co. v. Contin. Cas. Co.*, 239 Md. 421, 212 A.2d 96 (1965); *Employers' Lia. Assur. Corp. v. Liberty Mut. Ins. Co.*, 167 N.E.2d 142 (Ohio 1959). *See* Keaton and Wades, *Insurance Law* § 3.11 (1988), p. 264 (West Pub. Co.); *see also Insurance Co. of N. Am. v. Continental Cas. Co., supra; Maryland Cas. Co. v. Horace Mann Ins. Co.*, 551 F.Supp. 907 (W.D.Pa.1982); *P.L. Kanter Agency, Inc. v. Continental Cas. Co.*, 541 F.2d 519 (6th Cir.1976).

**6.** *See Continental Cas. Co. v. Weekes, supra; Continental Cas. Co. v. Suttenfield*, 236 F.2d 433 (5th Cir.1956); *Faltersack v. Vanden Boogaard*, 39 Wis.2d 64, 158 N.W.2d 322 (1968); *State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.*, 477 S.W.2d 421 (Mo.1972).

**7.** *See New Amsterdam Cas. Co. v. Hartford Accid. & Indem. Co.*, 108 F.2d 653 (6th Cir.1940).

**8.** *See* discussion in *Oregon Auto. Ins. Co. v. U.S.F. & G.*, 195 F.2d 958 (9th Cir.1952), reject-

adopted a middle ground. Under this view, it is held that, when "other insurance" clauses conflict, they are repugnant and each is rejected *in toto*, usually resulting in the carriers paying *pro rata*.[9] This is the modern trend where an "excess" clause conflicts with another similar "excess" clause in another policy. *See Annotation: Resolution of Conflicts, in Non–Automobile Liability Insurance Policies, Between Excess or Pro–Rata "Other Insurance" Clauses*, 12 A.L.R.4th 993; *Annotation: Apportionment of Liability Between Liability Insurers Each of Whose Policies Provides That It Shall be "Excess" Insurance*, 69 A.L.R.2d 1122.[10]

This court finds that the myriad of cases cited above going in every direction are not of substantial help in deciding this case. The outcome of many of them depended on the peculiar circumstances of the case and the exact wording of the various policies being construed. It is also obvious, at least to this court, that some of them make "bad law" because of the rightful concern of many courts that injured persons be adequately compensated.[11]

Choosing to cause one of two conflicting clauses to govern merely because excess clauses should control over escape clauses, or vice versa, is not based on much logic and has been said to be based upon circular reasoning, with the result depending upon which policy one happens to read first. *See Oregon Auto. Ins. Co., supra.*

Because this is a diversity case governed by Arkansas law, the question, of course, is which, if any, of the aforementioned positions has Arkansas adopted? While the court can find no Arkansas cases directly on point, and has been pointed to none by the parties, research discloses that Arkansas courts have expressed no particular disfavor for escape clauses and have traditionally upheld such clauses against attacks based upon public policy and later arguments based upon an asserted inconsistency with the uninsured motorist statute. As noted, Arkansas courts have rejected challenges to such clauses in the uninsured motorist context regardless of

---

ing this view as well as the "specificity" test, and the "first-issued" rule).

**9.** *See Continental Cas. Co. v. General Accid. Fire & Life Assur. Corp.,* 175 F.Supp. 713 (D.Or.1959), and supp. opin., 179 F.Supp. 535, *aff'd as mod.,* 287 F.2d 464 (9th Cir.1960); *Oregon Auto. Ins. Co. v. U.S.F. & G., supra; Employers Mut. Cas. Co. v. MFA Mut. Ins. Co.,* 384 F.2d 111 (10th Cir.1967); *General Ins. Co. v. Truck Ins. Exch.,* 242 Cal.App.2d 419, 51 Cal.Rptr. 462 (1966); *New Amsterdam Cas. Co. v. Certain Underwriters at Lloyd's, London,* 56 Ill.App.2d 224, 205 N.E.2d 735 (1965); *Indiana Ins. Co. v. American Underwriters, Inc.,* 261 Ind. 401, 304 N.E.2d 783 (1973); *Union Ins. Co. v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d 413 (Iowa 1970); *Veillon v. Southern Farm Bureau,* 254 So.2d 130 (La.App. 1971); *Gilkey v. Andrew Weir Ins. Co.,* 291 F.2d 132 (9th Cir.1961) (Oregon law); *State Farm Mut. Auto. Ins. Co. v. U.S.F. & G.,* 490 F.2d 407 (4th Cir.1974) (West Virginia law); *State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986) (*en banc*); *Western Cas. & Sur. Co. v. Universal Underwriters Ins. Co.,* 232 Kan. 606, 657 P.2d 576 (1983); *Indiana Ins. Co. v. Federated Mut. Ins. Co.,* 415 N.E.2d 80 (Ind.App. 1981); *Dette v. Covington Motors, Inc.,* 486 So.2d 805 (La.App.1986).

**10.** For a discussion of conflicting excess clauses and *pro rata* clauses, *see Annotation: Apportionment of Liability Between Automobile Liability Insurers Where One of the Policies Has an "Excess Insurance" Clause and the Other a "Proportionate" or "Pro Rata" Clause,* 76 A.L.R.2d 502.

**11.** In some jurisdictions, including Arkansas, courts accept the insurance companies' position that the excess/escape clause is clear and unambiguous and allows an insurer to reject claims even when a claimant has not been fully compensated by the primary coverage. These decisions hold that, when one uninsured motorist coverage is applicable to the accident, the insured is in the same position that would have existed if the tortfeasor had been covered by a liability insurance policy with the minimum limits of liability required by the state financial responsibility law, and that it is irrelevant whether the uninsured motorist insurance is disbursed to other claimants. *See Harris v. Southern Farm Bur. Cas. Ins. Co.,* 247 Ark. 961, 448 S.W.2d 652 (1970). This is the view in several jurisdictions, including Caliafornia, Maryland, Massachusetts, New York, Utah, and perhaps Illinois, Michigan, and South Carolina. *See* Keaton and Wades, *supra,* § 3.11, pp. 269–70, n. 11.

Courts in several jurisdictions have concluded that a claimant should receive the minimum amount mandated by the state financial responsibility statutes. Adopting this view are Arizona, Connecticut, Iowa, Tennessee, and Wisconsin. *See* Keaton and Wades, *supra,* p. 271, n. 13.

the amount of indemnification, if any, that the claimant receives from primary coverage. See footnote 10, *supra*.

The Arkansas Supreme Court has sustained the validity of escape clauses where only one of two policies contains such a clause. In *Planters' Mut. Ins. Co. v. Green*, 72 Ark. 305, 80 S.W. 151 (1904), the court upheld the validity of an escape clause which stated:

> This entire policy ... shall be void if the insured now has or shall hereafter ... procure any other contract of insurance, whether valid or not on property covered ... by this policy.

The court held that the policy was voided by the purchase of additional insurance by the insured. This principle was reiterated in *Nabors v. Dixie Mut. Fire Ins. Co.*, 84 Ark. 184, 105 S.W. 92 (1907).

In *Milwaukee Mechanics' Ins. Co. v. Gibson*, 199 Ark. 542, 134 S.W.2d 521 (1939), one of the policies at issue contained both a *pro rata* clause and an escape clause. The insured argued that the clauses of that policy were inconsistent and therefore the *pro rata* clause controlled because it was more favorable to the insured. The court disagreed and held that the coverage of the policy was voided by other insurance covering the property. *In accord Roach v. Arkansas Farmers Co.*, 216 Ark. 61, 224 S.W.2d 48 (1949); *Agricultural Ins. Co. v. Arkansas Power & Light Co.*, 235 Ark. 445, 361 S.W.2d 6 (1962).[12]

In short, the Arkansas cases indicate that escape clauses such as the one present in the State Farm policy in this case are valid and are to be construed and applied as are other provisions of insurance policies. In this respect, it should be remembered that a policy of insurance is nothing more than a contract between the insurance carrier and its insured, and is to be governed by the ordinary rules of interpretation of contracts. *Couch on Insurance* § 45:294 at 620, and *Perkins v. Clinton State Bank*, 593 F.2d 327 (8th Cir.1979). A common sense approach should be used, and generally the words employed in the policy are to be understood in their ordinary sense. *Wommack v. United States Fire Ins. Co.*, 323 F.Supp. 981 (W.D.Ark. 1971).

In construing and applying the "other insurance" clauses in the insurance policies in question in this case, the court must first determine whether it deems these provisions to be ambiguous, because, if they are, the law is well settled that the provision will be construed against the insurance company that drafted it. *Aetna Cas. & Sur. Co. v. Stover*, 327 F.2d 288 (8th Cir. 1964); *Reiter v. State Farm Mut. Auto. Ins. Co.*, 357 F.Supp. 1006 (E.D.Ark.1973); *Countryside Cas. Co. v. Grant*, 269 Ark. 526, 601 S.W.2d 8'/5 (1980). See also the discussion and cases cited at 43 Am.Jur.2d *Insurance* § 283.

On the other hand, if the court deems the provision to be plain and unambiguous, the law is that the court will not use a forced construction of the terms of an insurance contract where no ambiguity exists, and must apply the law to the unambiguous terms. *Benton State Bank v. Hartford Acc. & Indem. Co.*, 452 F.2d 5 (8th Cir. 1971); *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499 (8th Cir.1964); *Hardware Dealers Mutual Fire Ins. Co. v. Holcomb*, 302 F.Supp. 286 (W.D.Ark.1969); *Southern Farm Bureau Cas. Ins. Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976); and *Arkansas Blue Cross–Blue Shield, Inc. v. Tompkins*, 256 Ark. 370, 507 S.W.2d 509 (1974).

In *Rogers v. State Farm Ins. Co.*, 243 Ark. 887, 422 S.W.2d 677 (1968), the Arkansas Supreme Court, after recognizing that the modern trend is to broaden coverage under omnibus clauses of insurance contracts, then stated:

> [B]ut liberal construction should not extend coverage under an omnibus clause, or restrict it under an exclusionary clause, beyond the plain words and obvi-

---

**12.** Other Arkansas cases either concerning or discussing the validity and effect of escape clauses include *Arkansas Grain Corp. v. Lloyd's*, 240 Ark. 750, 402 S.W.2d 118 (1966) and *Ins. Co. of N. America v. Nicholas*, 259 Ark. 390, 533 S.W.2d 204 (1976).

ous intent and meaning of the words used in the contract.

The court does not believe that either of the "other insurance" clauses contained in the State Farm and American General policies are ambiguous. The State Farm policy provides in a straightforward manner that it does not provide coverage "if the insured or the owner has other liability coverage which applies in whole or in part as primary, excess, or contingent coverage", and the owner of the vehicle involved is in the "car business." On the other hand, the American General policy provides that, where there is other insurance, the insurance provided by that policy will be "excess coverage". Therefore, circular reasoning is not necessary to apply these provisions of these two policies and it makes no difference which policy is read first. The American General policy provides some type of coverage irrespective of whether there is other coverage provided by another insurance carrier. In other words, that policy always provides either primary coverage or excess coverage.

On the other hand, the State Farm policy rather clearly and unambiguously says that it will provide no coverage where another carrier has covered all or any part of the loss either through "primary, excess, or contingent coverage".[13] Thus, there is no conflict between the State Farm provision and the American General provision. Under all circumstances, American General provides some type of coverage, either primary, excess, or contingent, and, under those circumstances, the State Farm policy specifically provides no coverage.

In summary, of the insurance carriers who are defendants in this case, only American General provides coverage. Shelter, which issued the policy to the Steeles does not because Casteel, the driver of the vehicle involved in the accident, was not an insured as that term is defined in the Shelter policy. State Farm provides no coverage because, while Casteel is an insured, there is a specific and unambiguous escape clause providing that the policy affords no coverage to Casteel under the circumstances of this case.

A judgment in accordance with the foregoing will be concurrently entered.

---

13. It appears that this policy language may have been drafted with the shifting and conflicting law set forth above in mind, since it avoids usage of some of the terms which have caused courts problems in the past. For example, coverage does not depend upon whether there is "valid and collectible insurance" provided by another carrier. Instead, there is no coverage under the State Farm language where the owner or insured has "other liability coverage" covering any part of the loss whether that coverage is primary, excess, or contingent upon the happening of some other event or the existence of some other factor such as the lack of insurance provided by another carrier.