46060.   SOUTHERN HOME INSURANCE COMPANY
v. WILLOUGHBY et al.

Argued March 8, 1971—Decided June 16, 1971—
Rehearing Denied July 7, 1971.

*Woodruff, Savell, Williams & Cox, Edward L. Savell,* for appellant.

*Powell, Goldstein, Frazer & Murphy, C. B. Rogers, R. Carl Cannon, Ross & Finch, I. J. Parkerson, Hamilton Lokey, Gerald F. Handley,* for appellees.

HALL, Presiding Judge. At the outset, we must answer Southern's contention that it affords *no* coverage to the customer since the policy provides that "garage customers are not insureds" unless they fit certain listed exceptions (which this customer does not). In other words, they contend the policy excludes a whole class of persons from coverage and that the right to make such an exclusion was upheld in *Fireman's Fund Indem. Co. v. Mosaic Tile Co.,* 101 Ga. App. 701 (115 SE2d 263). We would agree if this policy merely excluded garage customers as a class. However, a reading of the endorsement shows that a simple exclusion is not intended and that the disclaimer is merely surplusage. First of all, the caption reads "Limited Coverage For Certain *Insureds*" (Emphasis supplied). The clear meaning of the text is not to exclude a class that would otherwise be covered, but to write a separate policy with a different face value, having "other insurance" clauses of the escape and excess variety, depending on the custom-

er's circumstances.

The endorsement is confusing until we remember that this form policy is used nation-wide. The endorsement is designed for states having compulsory insurance laws which require that the owner of every vehicle carry minimum insurance covering anyone who drives it with his permission. See Davis v. DeFrank, 33 A. D. 236 (306 NYS2d .827). Since this is not the law in Georgia, the language concerning a "reduced premium" is also inapposite. In the absence of a basis for vicarious liability, the prudent owner need not provide any coverage for others at all. Here however, it did, and the company also accepted an additional premium (albeit "reduced") for the owner's possibly unknown and unintended generosity. Since the jury found that the customer was driving within the scope of permission, we must consider her covered by the policy's omnibus clause and the issue is what effect the escape clause has on the coverage.

Double coverage is a common situation in the automobile insurance field. The simplest and most typical example is that of an insured driver, using with permission an automobile belonging to an insured owner. Because of the possibility of double indemnification, all insurance companies have resorted to "other insurance" clauses of various types. The difficulty lies not in interpreting the clause in one policy but in reconciling conflicting clauses in both policies. There is no problem when both have only pro rata provisions. It is the combinations having excess or escape clauses that have given the courts so much trouble. See Note, 38 Minn. L. R. 838; Note, 20 Hastings L. J. 1292; 8 Appleman on Insurance § 4914 (pocket part, p. 215).

The problem of reconciling these particular kinds of clauses in standard automobile policies has never been presented squarely to the Georgia courts. Nationwide and American cite the two cases which have dealt with the question generally, but both are distinguishable. The "specific v. general coverage" test was enunciated in *Hartford Steam Boiler Inspection &c. Co. v. Cochran Oil Mill &c. Co.*, 26 Ga. App. 288 (105 SE 856). There, however, one policy was an employees' personal injury liability policy while the other was primarily a property damage policy. Also, the conflicting clauses were both of the "excess" type. While the test may have

value when two generically different policies are involved, it is impossible to apply when the conflict arises among essentially similar automobile liability policies. A later case which did involve two automobile liability policies cited and quoted from *Hartford.* Nevertheless, the opinion was clearly based on the fact that the policy of "spot insurance" issued on a rental car was not only required by statute but paid for by the renter. *Continental Cas. Co. v. Owen,* 90 Ga. App. 200 (82 SE2d 742).

We see no precedent or illumination for the case before us now. As a matter of interest, neither did the United States District Court, applying Georgia law, in a similar conflict of clauses case. See Bradshaw v. St. Paul Fire & Marine Ins. Co., 226 FSupp. 569.

When faced with interpreting policies containing escape and excess clauses, other jurisdictions have gone in several directions deciding which policy is primary. We shall not attempt to set out the various rationales used. For excellent examples of well reasoned opinions reaching different results, see Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N. C. 341 (152 SE2d 436) (escape clause prevails because excess policy is other collectible insurance which then becomes primary); Federal Ins. Co. v. Prestemon, 278 Minn. 218 (153 NW2d 429) (excess clause prevails because it does not come into play until a primary policy is established); and Judge Tate's concurring opinion in State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co., (La. App.) 184 S. 2d 750, 753 (excess clause prevails because the policy particularly insuring the accident vehicle should be primary). For a comprehensive survey of all the tests courts have used, see Note, 38 Minn. L. R. 838; Anno. 46 ALR2d 1163.

After studying a variety of these cases, we must agree with Judge Healy of the Ninth Circuit. "Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg." Oregon Auto. Ins. Co. v. U. S. F. & G. Co., 195 F2d 958, 960.

In a learned opinion which upheld the principle of pro-rating in a "battle of the clauses," Judge Landry of the Louisiana Court of Appeal made the following statement: "In our judgment double

coverage policies providing primary protection attended by mutually repugnant 'excess' or 'escape' clauses must both be regarded as primary insurers on the theory that the clauses being irreconcilable must be deemed ineffectual." Graves v. Traders & General Ins. Co. (La. App.) 200 S. 2d 67, 77. With the "other insurance" clauses out of the picture, the pro rata clause of each policy was activated.

Pro-rating has been criticized as an easy way out which ignores the contractual intent of the parties. Naturally, seeking and then enforcing the intention of the parties, regardless of technical rules of construction, is a cardinal rule. *Code* § 20-702. But which parties and which intentions must we effect? We surely cannot decide on a case to case basis, depending upon what seem to be the equities among the people involved in the collision. Just as a contract must be read as a whole, two or more applicable contracts must be read together in order to arrive at a "true interpretation." *Code Ann.* § 20-704. "The insurers involved in any given conflict intended to indemnify the insured when a covered loss occurred. At the same time, the very fact that 'other insurance' clauses are inserted in these policies indicates an intent not to be liable for the entire loss when there is double coverage. Prorating the loss among the insurers gives effect to this intent, though it must be admitted that the intent of each insurer as to how the loss should be distributed is disregarded by this solution. The net effect of the Oregon Rule [Oregon Auto. Ins. Co. v. U. S. F. & G. Co., 195 F2d 958, supra], then, is to give effect to the common intent of all insurers not to be liable for the entire loss, rather than to give complete effect to the intention of one insurer while completely disregarding the intention of another insurer." 20 Hastings L. J. supra, p. 1304.

This result is not only equitable, but preferable to some rule which is logically acceptable only when considered in a vacuum. All the policies here have pro rata clauses. In the absence of the excess or escape clauses, the liability of each company, by the terms of its own policy, would be determined by pro-rating. As the excess and escape clauses here are logically irreconcilable, they cancel one another out and have no more effect than as if they were never written.

Therefore, as to the customer-driver, both Southern and Nationwide afford primary coverage (and duty to defend) which should be apportioned according to their respective pro rata clauses. Also, since it is Southern's main policy which affords coverage here and not the attempted "policy within a policy" for uninsured customers which forms another section of the endorsement, the $10,000 limitation has no bearing on the pro-rating formula. The face value of the policy for this type of occurrence is the proper figure.

Since Southern's escape clause applies only to customers, and salesmen are specifically named in the policy, the trial court was correct in finding that Southern afforded primary coverage and duty to defend the salesman here and that American would be excess only. American has attempted to raise the issue of no coverage by brief. While there may be some grounds for this position, American did not appeal from the judgment of the trial court and we cannot consider the matter.

All the enumerations of error based on the court's failure to charge certain principles of law are without merit since the omissions were not harmful as a matter of law and the appellant neither requested the charges nor objected to their omission at the time. *Code Ann.* § 70-207; *Royal Frozen Foods Co. v. Garrett,* 119 Ga. App. 424 (167 SE2d 400); *Kypta v. Walters,* 121 Ga. App. 448 (174 SE2d 193); *Hollywood Baptist Church v. State Hwy. Dept.,* 114 Ga. App. 98 (150 SE2d 271); *Askew v. Amos,* 147 Ga. 613 (95 SE 5); *Campbell v. Dysard Constr. Co.,* 40 Ga. App. 328 (149 SE 713); *Freeman v. Coleman,* 88 Ga. 421 (14 SE 551).

*Judgment reversed in part, affirmed in part. Eberhardt and Whitman, JJ, concur.*