254 So.2d 130 (1971)
Sava VEILLON, Plaintiff-Appellee and Appellant,
v.
SOUTHERN FARM BUREAU et al., Defendants-Appellants.
No. 3568.
Court of Appeal of Louisiana, Third Circuit.
September 27, 1971.
*131 Voorhies, Labbé, Fontenot, Leonard & McGlasson by W. Gerald Gaudet, Lafayette, for defendant-appellant.
Lewis & Lewis by John M. Shaw, Opelousas, for defendants-appellees, Firemen's Fund Ins. Co. and Francis Young.
Daniel J. McGee, Mamou, and Fruge & Foret, by Jack C. Frugé, Ville Platte, for plaintiff-appellee.
Before HOOD, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
On July 31, 1968 plaintiff, Sava Veillon was involved in a vehicular accident in the Town of Mamou, Louisiana when the automobile which he was driving collided with a truck driven by Francis Young. The collision, which produced but minor damage to the vehicles involved, was found to be due to the sole negligence of Young and that finding being undisputed on appeal, we do not treat it herein.
At the time of the accident Francis Young had delivered a vehicle belonging to his employer, Home Discount, Inc. to the premises of Bordelon Motors of Eunice, Inc. for repairs, and had borrowed the truck in question from the latter as a substitute vehicle. The collision occurred as Young drove the borrowed truck from the Bordelon premises onto the public street and into the side of plaintiff's vehicle.
Four insurance companies were made defendants in the ensuing lawsuit. These were Firemen's Fund Insurance Company, who was the personal insurer of Young; Southern Farm Bureau Casualty Insurance Company, the insurer of Home Discount Center, Inc.; Hardware Mutual Casualty Company, the insurer of Bordelon Motors of Eunice, Inc.; and Sentry Life Insurance Company, alleged to also be an insurer of Bordelon Motors. This last insurance company was subsequently dismissed from the suit on the basis that it did not in fact have an applicable policy of insurance in effect.
After a trial on the merits judgment was rendered in favor of plaintiff and *132 against the three remaining insurance companies in the total sum of $10,056.30 representing $7,500.00 in general damages and $2,556.30 in special damages. The district court condemned Southern Farm Bureau and Hardware Mutual to contribute in equal shares, namely 105/220ths each, with Fireman's Fund contributing 10/220ths on the first $10,000.00 of the award, and on the amount over $10,000.00 Southern Farm Bureau was ordered to contribute 20/21sts and Fireman's Fund 1/21st. Appeals were taken by plaintiff and by Hardware Mutual, the former asking for an increase in the award and the latter seeking reversal of the judgment insofar as it held it liable at all, and in the alternative seeking to be held only for a pro rata share of the judgment based on its limit of liability. We consider first the appeal of plaintiff on the issue of quantum.
Plaintiff, who was 68 years old and a retired bus driver at the time of the accident testified that although he was able to walk about following the impact, he soon began to feel pain throughout his body. He therefore got back in his automobile and drove to the Savoy Memorial Hospital, Inc. where he consulted Dr. Roderick P. Perron, a general practitioner. Dr. Perron found generalized muscle tenderness, gave plaintiff some medication for his pain, and sent him home.
On the second of August, 1968, he returned to Dr. Perron complaining of severe pain and was hospitalized with a diagnosis of severe back sprain. He was treated with muscle relaxants and analgesics and also traction and ultra sound therapy. During his stay in the hospital, which lasted some 12 days, he was removed to the office of an orthopedic specialist for examination. Following his release, he was seen by Dr. Perron on a weekly basis until September 18, 1968 when he was again admitted to the hospital for a two-week stay. Thereafter he was treated as an out-patient on a regular basis until April of 1969, after which he would simply visit the doctor when he felt like he should. Based on the plaintiff's complaints of pain, together with such objective findings as atrophy of the left leg and deficiency of the Achilles reflex, Dr. Perron changed his original diagnosis of severe lumbar sprain to a herniated disc. He felt, however, that the condition had reached a plateau by the time of trial and would probably neither improve nor worsen, and this combined with plaintiff's age, induced Dr. Perron to reject the idea of surgery. The doctor opined that plaintiff would suffer recurrent pain for the rest of his life and require medication therefor.
The orthopedist who examined plaintiff at Dr. Perron's request, Dr. Lionel Mayer, actually saw plaintiff three times. It was his opinion that there was radiographic evidence of compression fractures involving the L-1 and L-3 vertebrae, but he could not determine the age of these fractures. Also he thought plaintiff to present a history of physical findings, and roentgenographic findings compatible with degenerative disc disease at the L-3 and L-4 and/or the L-4 to L-5 intervertebral space. Nevertheless, because of plaintiff's age and because his condition had stabilized by the last time he saw him, February 3, 1970, Dr. Mayer did not feel that surgery was indicated. He also predicted that although plaintiff would continue to experience some degree of pain or discomfort in his lower back region, it was very unlikely that such pain would become severe enough to require the use of narcotics. Nor did this physician think that further physical therapy, as heat or ultra-sound treatments, would be of any benefit to plaintiff over a prolonged period of time.
Plaintiff was examined at defendants' request by Dr. Fred C. Webre, an orthopedic surgeon of Lafayette, Louisiana, on December 8, 1969. X-rays made of plaintiff's back at that time showed narrowing of the interspace at L-1 and L-3 vertebral bodies and some osteoarthritic spurring at the L-3, L-4 and L-5 as well as the L-5 S1 interspaces arteriorly. These findings were explained by Dr. Webre to be due to a *133 process of degeneration over a number of years, and not uncommon to persons of plaintiff's age. He found nothing in plaintiff that would indicate a ruptured disc or any other fracture, dislocation, bone or joint disease.
Plaintiff stated that he is in constant pain, although it is of varying intensity. He said that he takes hot baths and medication to control the pain, but that at times it becomes so severe as to respond only to injections which he gets at the hospital. These injections, which he requires intermittently, are administered on the authority of a prescription therefor that he carries with him. He also alleged that since the automobile accident his activities, especially those of tree pruning, had been severely curtailed.
A final factor of significance in the determination of quantum is a previous accident in which plaintiff fell from a tree a distance somewhat in excess of ten feet to the ground. This occurred on December 28, 1967 while plaintiff was engaged in trimming a tree, and the implication raised by defendants is, of course, that plaintiff's injuries could well date back to that previous accident.
The physician who treated plaintiff for his fall, Dr. Wayne G. LaHaye, testified that the only injuries that he diagnosed in him at that time were contusions of the rib cage and a possible fracture of one rib. He stated that had plaintiff suffered the back injuries now complained of in the 1967 fall, he would have expected to see some symptoms of them at the time. However he did not take x-rays of the lumbar area, and he conceded on cross examination that it was possible for plaintiff to have suffered a ruptured disc when he fell from the tree. Also he was asked to examine x-rays of plaintiff's back taken at different dates. He observed compression fractures in the L-3 and possibly L-1 vertebrae on films made in August of 1968, but could not determine the age of the fractures. On films made in 1964 he noted spurring of the lumbar vertebrae which, he said, was compatible with arthritis of the lower back. Dr. LaHaye said that this spurring is common in men of plaintiff's age and is not necessarily accompanied by symptomatology.
The concensus of the medical opinion, expressed in response to hypothetical questions, was that if plaintiff had suffered the injuries to his spine which he now claims in the 1967 fall, it would be highly unlikely that he could have returned to his tree climbing activities. Accordingly plaintiff introduced the testimony of various persons, in addition to his own, in an effort to show that he had in fact returned to those activities after his fall but had ceased engaging in them after the accident at bar. Some of this testimony does seem to indicate that plaintiff continued to prune trees up until the time of the July 31, 1968 accident, however, the bulk of it is unclear and unconvincing. The trial judge concluded that the evidence did not establish any such activity on plaintiff's part after his 1967 fall and because of its ambiguity, we cannot say that there is manifest error in his conclusion.
We see then, that although plaintiff was certainly injured in this collision, there is conflict in the medical testimony regarding the nature and extent of his injuries. Additionally there is an indication that some of the injuries might pre-date the accident at bar. Under these circumstances we are of the opinion that the trial judge did not abuse his great discretion in awarding plaintiff the sum of $7,500.00 for his general damages. La.Civil Code, Art. 1934(3).
Plaintiff's claim for lost earnings and future income were properly denied by the trial court. As said above, there was great ambiguity regarding his work activities after his fall of 1967, but more importantly, plaintiff was completely unable to even approximate the amount of his alleged income from pruning trees. Further, his income tax returns for the years 1965, 1967, 1968 and 1969, copies of which were filed in evidence show no *134 income at all from this source. Thus, in this connection, plaintiff has failed to meet even the most liberal standard of proof.
Likewise plaintiff has failed in his obligation to prove the extent of damage to his vehicle. His only offer in this regard, aside from his own testimony, was what appears to be an estimate of repairs from a body shop stating a total sum of $346.47. The instrument is unsigned, unitemized, and bears no indication that the stated amount was ever paid by plaintiff. Neither does it bear any indication of by whom it was written and the author was not called as a witness. We therefore have neither proof of payment nor proof that the stated amount represents the cost of repairs exclusively made necessary by the accident in question. Accordingly this portion of plaintiff's claim must be disallowed.
We turn now to the appeal of Hardware Mutual.
Its first contention, that it should be absolved of any liability whatsoever, is based on an endorsement to its policy which provides as follows:
"In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:
1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.
2. If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.
3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit."
A reading of the above would seem to indicate the correctness of Hardware Mutual's argument, however this endorsement is not significantly different from the provisions of the policy considered by our Supreme Court in Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116. That Garage Policy provided that it would apply to garage customers:
"(O)nly if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person * * *."
There was another policy covering the driver in the Graves case which provided coverage for a temporary substitute automobile under the condition that:
"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and colletible insurance against such loss; provided, * * * coverages * * * with respect to temporary substitute automobiles * * * shall be excess insurance over any other valid and collectible insurance." *135 In addition to the Hardware Mutual escape clause above quoted, the three policies applicable to the case at bar had excess clauses similar to the one just quoted from the Graves case. Thus the Southern Farm Bureau policy provided that:
"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the ap-applicable contribution provision below:
(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."
The Hardware Mutual policy provided that:
"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."
And the Fireman's Fund policy provided that:
"Other Insurance. If the insured has other insurance against a loss covered by Part 1 of this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
The Supreme Court held in Graves (wherein there was also a reduced premium for the Garage Policy) that the two clauses quoted herein from that case were mutually repugnant and ineffective. Considering *136 their similarity to the corresponding portions of the excess and escape clauses contained in the Hardware Mutual and Fireman's Fund policies, we must follow the Graves decision and thus affirm the district court in its conclusion that the clauses before us are likewise mutually repugnant and ineffective and that therefore all three insurers must share the liability to plaintiff. The argument of Hardware Mutual that it should be released from all liability is therefore rejected.
We find merit, however, in Hardware Mutual's alternate argument that the trial judge erred in his distribution of the liability as between the three insurance companies. As hereinbefore stated, the trial judge condemned Southern Farm Bureau and Hardware Mutual to contribute in equal shares, yet the clauses from their policies quoted above clearly state that they will do so only if all insurers concerned are bound by their policies to do likewise. If such is not the case, by the terms of both policies, the contribution of each insurer is to be on a pro rata basis in proportion to the applicable policy limits. Clearly, the clause quoted from the Fireman's Fund policy does not provide for contribution by equal shares but rather limits such contribution to a pro rata basis, and when taken together with the clauses from the other two policies produces the end result that contribution by all three insurers must be on a pro rata basis. Again, in the Graves case, supra, we find the Supreme Court stating that when the words of an insurance policy "* * * are clear and explicit and lead to no absurd consequence, the courts may not alter them. La.Civil Code Art. 1945." As in the Graves case, the pro rata clauses in the policies before us are compatible and unambiguous, and they will therefore be given effect.
Southern Farm Bureau had applicable policy limits of $100,000.00 and Hardware Mutual and Fireman's Fund each provided coverage with limits of $5,000.00. The proper division of liability then, would have Southern Farm Bureau paying 20/22nds of the judgment in favor of plaintiff and Hardware Mutual and Fireman's Fund each contributing 1/22nd of said award.
Accordingly the judgment of the trial court is amended so as to cast Southern Farm Bureau Casualty Insurance Company for 20/22nds of the sum of $10,056.30 or $9,142.00, and Fireman's Fund Insurance Company and Hardware Mutual Casualty Company each for 1/22nd of the above said sum, or $457.10, and as thus amended is affirmed.
Costs in the trial court are to be paid by the three defendant insurance companies in the same proportions as above said, and in the appellate court, are to be paid one half by plaintiff and the other half in the proportions of 21/22nds by Southern Farm Bureau Casualty Insurance Company and 1/22nd by Fireman's Fund Insurance Company.
Amended and affirmed.