**ARGONAUT INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**COTTON STATES MUTUAL INSURANCE COMPANY, a corporation, Defendant.**

No. 71-539-Civ-J-T.

United States District Court, M. D. Florida, Jacksonville Division.

March 6, 1974.

Lloyd C. Leemis, Jacksonville, Fla., for plaintiff.

H. Franklin Perritt, Jr., Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION

TJOFLAT, District Judge.

This is an action for declaratory judgment to determine whether plaintiff or defendant or both provide insurance coverage in a certain personal injury occurrence. Jurisdiction is based upon diversity of citizenship and the amount in controversy exceeds $10,000. The parties have stipulated to the facts and submitted the case to the Court with proposed findings of fact and conclusions of law and memoranda in support of their respective positions. On this record, the Court makes the following findings of fact and conclusions of law.

On August 17, 1970, Harold H. Ellison was a self-employed chicken farmer engaged in raising broilers under contract with Gold Kist, Inc., on his farm near Perry, Florida. On that date Gold Kist, a part of the Cotton Producers Association, was engaged in the business of purchasing and processing broilers, with a plant located near Live Oak, Florida. Pursuant to a contractual arrangement with Harold Ellison, Gold Kist would periodically send their trucks, forklifts, crates and employees to the farm of Ellison and load broilers purchased from Ellison onto Gold Kist trucks, after

which they would be transported to the Gold Kist plant.

In the early morning of August 17, 1970, such a loading operation was being carried out at the farm of Harold Ellison. A flat bed trailer and tractor had been positioned in front of one of the chicken houses. A forklift, transported to the farm site on another truck of Gold Kist, was used to unload empty crates from the trailer, and to load full crates of chickens onto the trailer. The forklift was used by Gold Kist exclusively for such loading and unloading operations.

Staged photographs submitted by the parties show the positions of the vehicles when Mr. Ellison's injury occurred. The forklift was being operated by an employee of Gold Kist. At the precise moment of injury, the forklift had placed a stack of full crates of chickens on the truck and was backing into position next to the truck to pick up another stack of crates on the other side of the truck. Mr. Ellison was apparently caught between the forklift and the truck and fell partially under the truck with his foot extending out under the wheel of the forklift. The parties have stipulated that "legal liability existed on the part of Gold Kist with respect to the injury to Harold Ellison and the amount of such liability was discharged for the sum of $35,000.00". Each party contributed equally to the settlement and each now seeks to recover from the other $17,500.00.

At the time of the accident, Gold Kist carried several policies of insurance on various aspects of their operations. The policy of Argonaut Insurance Company was a comprehensive general liability policy, requiring the company to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies . . . ." The policy specifically excludes "bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile . . .

owned or operated by . . . the named insured." An automobile is defined in the policy as "a land motor vehicle, trailer or semi-trailer, designed for travel on public roads . . . but *does not* include mobile equipment (emphasis added)". The parties have stipulated that the forklift is a land vehicle coming within the definition of "mobile equipment" under the terms of both insurance policies.

The policy of Cotton States Insurance Company was an automobile liability policy covering the insured for legal liability because of bodily injury "caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading of any automobile. . . ." The tractor-trailer unit which was being used at the time of the accident was among the vehicles declared and listed in the policy.

█ It is clear that the automobile liability policy of defendant Cotton States provides coverage under these facts. Defendant argues that there were in effect two separate "loading" operations taking place, one the loading of the truck and the other the loading of the forklift. It is defendant's contention that when the forklift is backing away from the truck the loading of the forklift is in progress. However, this Court cannot accept such a strained construction of the facts. Under the more liberal "completed operations doctrine" which has been adopted in Florida, General Accident Fire and Life Assurance Corp. v. Liberty Mutual Insurance Co., 260 So.2d 249 (D.C.A.Fla. 4th Dist. 1972), the entire integrated process of loading the truck should be considered to come under the policy definition of loading or unloading of an automobile. The fact that mobile equipment is excepted from the definition of automobile in the Cotton States policy does not relieve Cotton States of any liability incurred in the loading operation, as the policy clearly applies to the process of loading and unloading the insured vehicle by whatever means this was being accomplished. It is the conclusion of this

Court that the causal connection between the loading operation and the accident necessary to sustain coverage under the Cotton States policy is present in this case. *See* Fireman's Fund Insurance Co. v. Canal Insurance Co., 411 F.2d 265 (C.A. 5th 1969).

■ It is the opinion of this Court that the comprehensive general liability policy of plaintiff Argonaut Insurance Company also provides coverage in this case. Plaintiff argues that since the policy specifically excludes from coverage the "loading or unloading of any automobile," there can be no coverage under these facts. While it is true that the above exclusion is in the policy as part of the general exclusion of automobiles from coverage, the policy still applies to the use of any mobile equipment, a class of equipment which the parties have stipulated includes the forklift being used to load the truck. When the policy specifically applies to the use of the forklift, but excludes from coverage automobiles, including their loading and unloading, it is at best ambiguous as to whether coverage is excluded in the case of an insured forklift participating in the process of loading a vehicle which comes within the policy definition of automobile. It is a generally accepted principle of insurance law that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and that insurance policies, like many other form contracts will be construed most strongly against the drafter.

■ For the foregoing reasons, it is the finding of this Court that both policies provide coverage in this instance. Argonaut argues that even if we should find that both policies apply to this incident, Cotton States must ultimately bear the entire loss. The Cotton States automobile liability policy includes under persons insured not only the named insured, but also "any other person while using as owned automobile, or a hired automobile with the permission of the named insured, provided his actual operation or use thereof is within the scope of such permission but with respect to bodily injury . . . arising out of the loading or unloading thereof, such other person shall be insured only if he is . . . an employee of the named insured . . . ." Based upon this extended coverage, which would appear to cover the employee of Gold Kist who was driving the forklift, plaintiff Argonaut claims that Cotton States should bear the entire liability because of Gold Kist's indemnity claim against the employee (allegedly the ultimately liable tort-feasor under these facts) to which Argonaut would be subrogated under their policy. Although this Court might infer from the stipulated facts that the stipulated "legal liability" incurred by Gold Kist is the result of the acts of the employee driving the forklift, it does not necessarily follow that an indemnity claim in favor of Gold Kist exists. There is no stipulation that it was the *sole* negligence of the employee which caused the accident, that the employer did not in any way contribute to the alleged negligence, or that the employee has no other defenses or set-offs to the indemnity claim by the employer. Since Argonaut's claim is by way of subrogation to the Gold Kist indemnity claim it cannot be said that Cotton States must bear the entire liability on the facts presented to this Court.

Both policies contain identical "other insurance" clauses which provide as follows:

> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. . . . . When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below.

The policies then provide that if the other insurance provides for contribution by equal shares (which is the case here)

then the Company would not be liable for a greater proportion of the loss than would be payable if each insurer contributed as equal share.

Therefore, it is the opinion of this Court that:

1. Plaintiff and Defendant are both liable for the loss under their respective policies, and in each case the coverage is primary.

2. In accordance with the "other insurance" clauses contained in the policies, each must bear one-half of the stipulated legal liability.

3. Parties are to bear their own costs in this action.