**GEORGIA CASUALTY & SURETY COMPANY, a corporation, Plaintiff-Appellee,**

v.

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a corporation, Defendant-Appellant.**

**No. 75–2106.**

United States Court of Appeals, Fifth Circuit.

July 6, 1976.

Rehearing and Rehearing En Banc Denied Sept. 17, 1976.

---

16. The proffer as to plaintiff's wife reproduced prove the contents of such letter.

Bibb Allen, Birmingham, Ala., for defendant-appellant.

J. Gorman Houston, Jr., Eufaula, Ala., for plaintiff-appellee.

Before TUTTLE, AINSWORTH and CLARK, Circuit Judges.

PER CURIAM:

The judgment appealed from is affirmed on the reasoning and analysis expressed in the unpublished memorandum opinion of the trial court.

. The memorandum opinion follows:

### MEMORANDUM OPINION

Suit was filed and resulted in a verdict and judgment and settlement for $95,000 in State Court for an injured employee of an independent contractor of M. C. Dixon Lumber Company, Inc., and Dixon Pulpwood Company, Inc., who were insured as to general personal injury liability by Universal Underwriters Insurance Company and Georgia Casualty and Surety Company, respectively. The Universal policy also insured Dixon Pulpwood as hereinafter pointed out. Suit was for negligently selecting a contractor which proximately caused the employee's injury. Universal's limit of liability was $500,000 and Georgia Casualty's limit was $100,000. The companies each paid $47,500 of the settlement and agreed that such payment should not prejudice either party in the instant suit wherein Georgia Casualty sues Universal, seeking to recover the amount paid by it in excess of $16,500 (which Georgia Casualty has agreed to pay). Georgia Casualty insists that each of the insurance companies was liable for a portion of the settlement proportioned in accordance with the limits of their coverage. Universal insists that its maximum (56) liability was no more than an amount equal to that of Georgia Casualty. The cause was submitted for final judgment.

The pertinent provisions of the policies were identical as follows:

"6. Other Insurance: The insurance afforded by this policy is primary insur-

ance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

"(a) Contribution by Equal Shares: If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

"(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Universal also insists that it had no liability as to the Dixon Pulpwood Company because, allegedly, its liability thereunto pertaining was limited by provisions of an endorsement to the policy containing "Comprehensive General Liability Insurance" on form L6180 and a "Description of Hazards." Defendant insists that (57) the "Description of Hazards" shows that Dixon Pulpwood was covered only as to liability arising from "Surveyors—land not engaged in actual construction—N.P.D.," which, by stipulation, it was not engaged in at the time of the accident and that, pursuant to the rule set out in *United States Fire Ins. Co. v. Hodges,* 275 Ala. 243, 154 So.2d 3 (1963), there could be no "pro rata" application because the two policies did not cover the same interest, the same subject matter, the same risk, and the same insured. However, that rule was set aside by the Supreme Court of Alabama in *State Farm Mutual Auto Ins. Co. v. Auto-Owners Ins. Co.,* 287 Ala. 477, 252 So.2d 631, 637 (1971), as follows: "[W]e are now convinced that the *Hodges* holding * * * is too narrow * * *." It is not necessary that this Court decide whether or not Dixon Pulpwood was protected by the policy of Universal because, clearly, Dixon Lumber (a co-defendant in the State Court case) is covered by Universal's policy, and it is no longer necessary, in order that there be "other insurance" (in accordance with Paragraph 6 of Conditions), that the other policy cover "the same interest, the same subject matter, the same risks and the same named insured."

▮ The question here, in the wording of Condition 6 of the policy, is whether, " * * * [B]oth this insurance and other insurance apply to the loss on the same basis * * *." This Court finds that both policies apply to the loss on the same basis and that Paragraph 6 of "Conditions" in the policy is applicable. " * * * [E]xceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and * * * insurance policies, like * * * other * * * contracts will be construed most strongly against the drafter." *Argonaut Ins. Co. v. Cotton States Mutual Ins. Co.,* 373 F.Supp. 817, 820 (M.D.Fla.1974). That case is authority for the proposition that the rule (58) creating a presumption against the scrivener is applicable for and

against insurance companies. However, *Argonaut* is no authority for Defendant's contention that the Georgia Casualty policy provides for "contribution by equal shares", because that question was not in issue in the *Argonaut* case.

The parties in that case apparently conceded that each policy provided for contribution by equal shares. 373 F.Supp. at 820.

■ The remaining question is whether Paragraph 6(a) or Paragraph 6(b) of "Conditions" is applicable to this case. The policies have the same pertinent provisions as to "Other Insurance". If either insurance policy provides for contribution by equal shares, then both so provide. Likewise, if either of the policies provides for pro rata contributions, then both so provide. Both policies containing the identical provision do not provide either for pro rata contribution or for contribution by equal shares. Each depends upon the other policy to provide validity and meaning to one or the other of the subparagraphs of Condition 6. This Court, therefore, is of the opinion that the condition of 6(a), "If all of such other valid * * * insurance provides for contribution by equal shares," has not been met and that the condition of 6(b), "If any of such insurance does not provide for contribution by equal shares," has been met and that, therefore, each policy provides that the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under the policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Accordingly, Universal, subject to the parties' agreement that Georgia Casualty will accept liability for $16,500, was liable for five-sixths of the obligation and Georgia Casualty was liable for one-sixth thereof. Georgia Casualty, having voluntarily accepted (59) liability for $16,500, was entitled to have Universal pay the balance of the $95,000 settlement or $78,500. Both companies having paid $47,500 each, Georgia Casualty is entitled to a judgment against Universal for the sum of $31,000. Judgment will be entered accordingly.

DONE THIS 27th day of March, 1975.

CLARK, Circuit Judge (dissenting in part):

I agree with the majority that the risks and parties were covered by the policies and that the "other insurance" clauses were operative. However, I dissent from the majority's holding that in this purely interinsurer dispute the identical provision in the two policies construed here does not "provide for" contribution by equal shares because I believe that holding to be at odds with the realities of insurance policywriting, the historical development of insurance law, and the intent of the parties to the insurance contracts in this case.

It must be remembered that policy provisions like those involved here, while nominally part of a contract between insurer and insured, are drafted with the conduct of other insurers in mind. The majority's construction ignores the industry-wide trend toward standardization of policy language. The majority declares a clause which states "I will if you will" is not enough to effect an "agreement" between insurers—an agreement that is ineluctably fictional. Thus, to get any "agreement" under the majority's rule, at least one insurer must say, in effect, "I will, no matter what." Such a requirement in and of itself arrests the standardization process. Further, to require that one insurer commit itself unconditionally to contribute equal shares before another company's offer to share equally could be said to "provide for" such contribution is to place both companies in a quandary. They offer equal sharing while their opposite number in a future loss event may offer only pro rata contribution. This uncertainty about loss sharing could prevent lowered underwriting reserves and thus increase costs for all insureds. Perhaps, by some combination of negotiation and coercion, the unconditional language could be imposed as the industry standard, but not without raising antitrust issues of considerable magnitude.

Second, the history of the construction of "mirroring" policy provisions affords guidelines for decision overlooked by the majori-

ty. Traditionally, the construction of "other insurance" clauses required judicial identification of primary and excess insurers where mirroring language was involved. In the past, the effect of such language was usually, "If there is other insurance, I'm not the primary insurer." Early cases typically gave full effect to this language. This could and did result in situations in which a multiple policyholder was denied coverage altogether. Gradually, the injustice to the insured of this position was perceived, and the next step was to invent fictions to identify the primary insurer. Several criteria were used: date of policy issuance, comparative policy limits, comparative total premiums paid, totality of circumstances. *See* Note, 38 Minn.L.Rev. 838 (1953). This method, too, was abandoned by many jurisdictions whose courts found sophistical the inquiry into primariness. *See e. g., Zurich General Accident & Liability Insurance Co. v. Clamor,* 124 F.2d 717 (7th Cir. 1941). The next step consisted of holding that the "other insurance" clauses were mutually repugnant, that both (or all) insurers afforded primary coverage, and that they should pay by shares prorated according to some judicially determined formula. Frequently, the old criteria for determining primariness were used as the basis for proration. *See, e. g., Oregon Automobile Insurance Co. v. United States Fidelity & Guaranty Co.,* 195 F.2d 958 (9th Cir. 1952). *See also* Annot., 76 A.L.R.2d 502. In 1959, the Supreme Court of Oregon went an additional step, holding that if the old criteria were fictional for the purpose of determining primariness, they were equally fictional for the purpose of determining the insurers' respective shares and that contribution should be by equal shares up to the policy limits of the insurer providing the lower coverage. On rehearing, confronted by joint motion of the parties to allow proration by comparative policy limits, the court modified its opinion accordingly. *See Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.,* 219 Or. 110, 341 P.2d 110 (1959).

As important as this decisional progression was the concomitant adjustment of policy language to the developing case law.

As full or partial escape gave way to proration, proration clauses began to appear in insurance policies in an attempt to control the formula selected. And after *Lamb-Weston,* "equal shares" became one of the formulae included in the list of permissible options. Where, as here, both insurers have taken the evolutionary step of including identical language agreeing to accept "equal shares," it seems to me inaccurate to say that the policies do not "provide for" contribution by equal shares simply because mirror image clauses are phrased in permissive rather than mandatory language. Each was written without knowledge of what other policy it would face and necessarily could not be worded with mandatory precision.

Finally, as a matter of insurance contract jurisprudence, the result of the historical trend in "other insurance" writing has been to enshrine as conventional wisdom the notions that escape, excess, and proration clauses in insurance policies bespeak a *general* intent to minimize the portion of the loss borne by the policywriter and that such intent was limited by the exercise of the same general intent by coinsurers. *See, e. g., Southern Home Insurance Co. v. Willoughby,* 124 Ga.App. 162, 182 S.E.2d 910, 913–14 (1971). I believe that a similar general intent to share the loss equally is shown here by the inclusion of the equal shares language. This construction is supported by *Argonaut Insurance Co. v. Cotton States Mutual Insurance Co.,* 373 F.Supp. 817 (M.D.Fla.1974), and *Veillon v. Southern Farm Bureau,* 254 So.2d 130 (La.App.1971). Each of the policies in the *Argonaut* case involved "other insurance" clauses with language identical to that in the present suit. Although the focus of the suit was the primary/excess question, I can find no support in the *Argonaut* opinion for the assertion of the court below that the point was conceded. There is only the statement:

> The policies then provide that if the other insurance provides for contribution by equal shares (*which is the case here*) then the Company would not be liable for a greater proportion of the loss then would

be payable if each insurer contributed as equal share.

373 F.Supp. at 820–21 (emphasis added).

The *Veillon* case held that where two of three coinsurers' policies contained provisions like those *sub judice,* but the third contained only a clause calling for proration on a policy limits basis, equal shares must give way to proration. The clear implication from the court's reasoning is that the absence of equal shares language from the third policy—not the absence of unilaterally binding language, a characteristic shared by all three policies—rendered a three-way contribution by equal shares improper.

Because I would reverse the trial court and direct rendition of judgment that Georgia Casualty take nothing, leaving undisturbed the insurers' equal-share payment of the settlement with the injured party, I respectfully dissent.